## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

David Vipond,                                           Case No. 24-cv-3125 (KMM/LIB)

        Plaintiff,

v.                                                                       **ORDER**

David DeGroat, in his official
capacity as Judge of White Earth Tribal
Court, and Dustin Roy, in his official
capacity as Director of White Earth
Division of Natural Resources,

        Defendants.

Before the Court is Plaintiff David Vipond's Motion for a Preliminary Injunction.

ECF 22. Mr. Vipond seeks to enjoin certain activity by David DeGroat,[1] in his official

capacity as a judge in the White Earth Tribal Court, and Dustin Roy, in his official capacity

---

[1] According to Mr. Vipond, Judge DeGroat recused himself from further participation in the tribal court proceedings after the filing of this federal case. In his briefing in support of the pending motion for a preliminary injunction, Mr. Vipond suggests that the newly presiding tribal judge be "automatically substituted for Judge DeGroat under Fed. R. Civ. P. 25(d)." ECF 24 (Mem. Supp. Prelim. Inj.) at 1, n.1. Federal Rule 25(d) provides for automatic substitution of a successor "public officer," in the event of the "death" or "separation from office" of the original public officer named in an official capacity in a federal lawsuit. It is not immediately clear to the Court whether Rule 25(d) applies to judicial recusals, but in any event, since the Court stays this litigation and declines to enjoin *any* tribal judge at this time, the question is academic. Mr. Vipond's request for substitution is noted, and he may renew it should this case resume after exhaustion.

1

as the head of the White Earth Division of Natural Resources. For the reasons that follow, Mr. Vipond's motion is **DENIED**.

## I.    Background

In an earlier order (ECF 47) denying Defendant Roy's Motion to Stay (ECF 15), Magistrate Judge Leo I. Brisbois laid out the factual background of this case. His thorough discussion, *see* ECF 47 at 1–4, is incorporated herein by reference, and this Court will not endeavor to repeat it. Instead, the Court will briefly summarize Judge Brisbois' background section to provide the necessary context for this Order.

The Wild Rice River (hereafter, also referred to as the "River"), flows west through the White Earth Reservation in northwestern Minnesota before it reaches the Red River of the North along the Minnesota-North Dakota border. *See* Wild Rice River, Minnesota Pollution Control Agency, https://www.pca.state.mn.us/watershed-information/wild-rice-river (last accessed February 26, 2025). The White Earth Reservation was created by treaty with the Chippewa in 1867. *State v. Clark,* 282 N.W.2d 902, 904, n.6 (Minn. 1979); *see also Littlewolf v. Lujan*, 877 F.2d 1058, 1060 (D.C. Cir. 1989) (explaining that "the Chippewa Indian Tribe ceded substantial territory in Minnesota to the United States in return for payments and the creation of the 830,000–acre White Earth Reservation").

Mr. Vipond is a farmer who received a permit from the Minnesota Department of Natural Resources ("MNDNR") to install a high-capacity water pump that would draw up to 65.2 million gallons of water, per year, from the River. *See* Am. Compl. (ECF 4) ¶¶ 1–21. The pump would be used to irrigate Mr. Vipond's farmland, where he grows corn,

beans, wheat, beets, and alfalfa. *Id.* ¶ 11. His property, which he owns in fee, sits entirely within the White Earth Reservation. *Id.* ¶¶ 7, 8. Mr. Vipond is not a tribal member of the White Earth Nation (hereafter, also referred to as the "Nation"). *Id.* ¶ 1. While Mr. Vipond's MNDNR permit was being processed but before it was issued, the Nation adopted an ordinance that requires a tribal permit to install and operate a high-capacity pump like the one sought by Mr. Vipond. *Id.* ¶ 22.

Mr. Vipond has not yet installed a pump, *id.* ¶ 21, but the Nation expects him to apply for a tribal permit before he does so. According to Mr. Roy, the Nation utilizes the River and other water resources on the White Earth Reservation to sustain important economic and social activities, including the cultivation of wild rice, a walleye fishery, a baitfish industry, and an ongoing effort to restore the lake sturgeon population within the Reservation. *See, e.g.*, ECF 42 (Def. Roy's Opp. Mot. Prelim. Inj.) at 5–6.[2] Mr. Vipond has not sought a tribal permit, so on August 23, 2023, the White Earth Department of Natural Resources ("WEDNR") filed suit against him in White Earth Tribal Court (hereafter, the "tribal court"). Am. Compl. ¶ 25. In that action, WEDNR seeks a declaration that Mr. Vipond may not install or operate a pump on the Wild Rice River without a tribal permit,

---

[2] Mr. Vipond does not appear to dispute this characterization about the importance of water resources to the Nation's economy. But the Court's acknowledgment of this seemingly undisputed fact does not suggest that the Court has made any determination about whether Mr. Vipond's pumping activities would affect or harm the Nation's water-based activities in ways relevant to the *Montana* analysis, discussed *infra*.

as well as a declaration that his pumping activity would fall within the tribal ordinance's reach. *Id*. ¶¶ 25–40.

Mr. Vipond has been participating in the tribal court action. Notwithstanding that fact, it appears that he has also been contesting the tribal court's jurisdiction over him from the outset. *Id*. ¶ 23. Indeed, after the lower tribal court entered an *ex parte* preliminary injunction against him, Mr. Vipond secured a victory at the tribe's appellate court, which ordered the lower court to go back and make threshold jurisdictional findings before proceeding further with the litigation. *Id*. The tribal court parties are now engaged in litigation and discovery regarding the jurisdictional issue. *Id*. This process was slowed by the illness of Mr. Vipond's counsel in the tribal court, but a hearing was scheduled for February 2025 that was expected to lead to a jurisdictional conclusion.

While this process was playing out in the tribal court, Mr. Vipond initiated the instant litigation in federal court by filing his complaint on August 2, 2024. ECF 1 (Compl.). Mr. Vipond amended his complaint shortly thereafter. ECF 4. Mr. Vipond seeks, among other things: a declaration that the tribal court lacks jurisdiction over him and lacks subject matter jurisdiction to hear the tribal court case against him; a declaration that "when the State of Minnesota permits water pumping activity from a navigable body of water for use on non-member fee lands, the pumping activity cannot meet the second *Montana*[3]

---

[3] *Montana v. U.S.*, 450 U.S. 544 (1981). This case is discussed, *infra*.

exception for tribal court jurisdiction over a non-member for activities on fee lands;" and an injunction against any further proceedings in the tribal court. *See id.* at 32.

Mr. Roy filed an Answer (ECF 12) and simultaneously filed a Motion to Stay this litigation while the tribal court process played out (ECF 13). Mr. Vipond opposed the stay (ECF 33) and also filed the pending motion seeking a preliminary injunction that is substantially coextensive with the ultimate equitable relief sought in his Amended Complaint (ECF 22). Specifically, Mr. Vipond asks this Court to preliminarily enjoin the judge presiding over the tribal court case from "taking further action in the suit in Tribal Court pending a final resolution of Plaintiff's subject matter jurisdiction objections in this action," and to enjoin Mr. Roy, in his official capacity as director of WEDNR, from "taking further actions to advance the suit in Tribal Court pending a final resolution of Plaintiff's subject matter jurisdiction objections in this action." ECF 28 (Proposed Ord. for Prelim. Inj.). Both Defendants oppose the entry of a preliminary injunction. ECF 37; ECF 42.

During the pendency of Mr. Vipond's motion, Magistrate Judge Brisbois held a hearing on Mr. Roy's motion to stay. ECF 36. He then entered an order, discussed above, in which he mostly denied Mr. Roy's request. ECF 47. In effect, Judge Brisbois concluded that the request for a stay had become intertwined with Mr. Vipond's injunction motion, in the sense that staying this litigation entirely while the tribal court process played out would amount to a denial of Mr. Vipond's motion seeking an injunction of the tribal court process. Because Mr. Vipond's motion was pending before the undersigned and was not within his remit as a magistrate judge, Judge Brisbois refused to enter the full stay that Mr. Roy

5

sought. Instead, he entered a stay that would last only until this Court reached a decision on the injunction sought by Mr. Vipond. Mr. Roy filed an appeal of Judge Brisbois's decision. ECF 49. On January 28, 2025, the Court held a hearing on Mr. Vipond's motion and also heard argument on Mr. Roy's appeal of Judge Brisbois's order on the stay. ECF 52. During that hearing, the Court explained that it was denying Mr. Roy's appeal, having concluded that Judge Brisbois had made no error of law and further noting that everyone had faced a complicated procedural circumstance created by the interconnection of two motions, one of which Judge Brisbois was not able to rule on. The Court took Mr. Vipond's motion under advisement.

For the reasons that follow, the Court now denies Mr. Vipond's motion and stays this litigation pending Mr. Vipond's exhaustion of remedies in the tribal court. As is explained below, the Court reaches this decision based on binding precedent requiring initial deference to a tribal courts' evaluation of its own jurisdiction when challenged in the manner that Mr. Vipond has done here.

## II.    Discussion

This case ultimately presents a dispute about the limits of tribal power over a non-member. "The powers of Indian tribes are, in general, *inherent powers of a limited sovereignty which has never been extinguished.*" *United States v. Wheeler*, 435 U.S. 313, 323 (1978) (internal quotation marks omitted). The tribes possess "attributes of sovereignty over both their members and their territory," *id.*, but "as a general proposition [] the inherent sovereign powers of an Indian tribe do not extend to the activities of nonmembers of the

6

tribe," *Montana*, 450 U.S. at 565. This general proposition, however, is "not an absolute rule" and is subject to two exceptions. *United States v. Cooley*, 593 U.S. 345, 350 (2021). First, a "tribe may regulate, through taxation, licensing, or other means, the activities of nonmembers who enter consensual relationships with the tribe or its members, through commercial dealing, contracts, leases, or other arrangements." *Id.* (quoting *Montana*, 450 U.S. at 566). Second, a "tribe may also retain inherent power to exercise civil authority over the conduct of non-Indians on fee lands within its reservation when that conduct threatens or has some direct effect on the political integrity, the economic security, or the health or welfare of the tribe." *Id*. (quoting *Montana*, 450 U.S. at 566).

The Nation's position in the tribal court (and Mr. Roy's ultimate position in response to Mr. Vipond's case in federal court) is that the effort to regulate Mr. Vipond, a non-member on fee land within the Reservation, falls squarely within the second *Montana* exception. For several reasons, Mr. Vipond disagrees. But running parallel to this dispute is another point of contention: whether the tribal court has the requisite jurisdiction to adjudicate the disagreement over the tribe's powers to regulate Mr. Vipond. Again, the Nation believes the tribal court has jurisdiction. Mr. Vipond does not, and wants this Court to say as much. Necessarily, this jurisdictional question, and any role this Court has in resolving it, comes first.

"A federal court's exercise of jurisdiction over matters relating to reservation affairs can [] impair the authority of tribal courts. . . ." *Iowa Mut. Ins. Co. v. LaPlante*, 480 U.S. 9, 15 (1987). "Therefore, 'as a matter of comity, the examination of tribal sovereignty and

7

jurisdiction should be conducted in the first instance by the tribal court itself.'" *Temple v. Mercier*, 127 F.4th 709, 715 (8th Cir. 2025) (quoting *Duncan Energy Co. v. Three Affiliated Tribes of Ft. Berthold Rsrv.*, 27 F.3d 1294, 1299 (8th Cir. 1994)); *see also Gaming World Int'l, Ltd. v. White Earth Band of Chippewa Indians*, 317 F.3d 840, 850 (8th Cir. 2003) ("[T]he tribal court should be given the first opportunity to address its jurisdiction and explain the basis (or lack thereof) to the parties.") (cleaned up).

"Under this doctrine, a federal court should stay its hand until tribal remedies are exhausted." *Temple*, 127 F.4th at 715 (internal quotation marks omitted). "Exhaustion is mandatory," *Gaming World Int'l*, 317 F.3d at 849, unless an exception applies: first, "where an assertion of tribal jurisdiction is motivated by a desire to harass or is conducted in bad faith," second, "where the action is patently violative of express jurisdictional prohibitions," or third, "where exhaustion would be futile because of the lack of an adequate opportunity to challenge the court's jurisdiction," *Nat'l Farmers Union Ins. Companies v. Crow Tribe of Indians*, 471 U.S. 845, 856 n.21 (1985). A fourth exception appears where "it is 'plain' that tribal jurisdiction does not exist and the assertion of tribal jurisdiction is for 'no purpose other than delay.'" *DISH Network Serv. L.L.C. v. Laducer*, 725 F.3d 877, 883 (8th Cir. 2013) (quoting *Strate v. A–1 Contractors*, 520 U.S. 438, 450 (1997)). Here, Mr. Vipond invokes the fourth exception (the "*Strate* exception").

But this case does not fall within the *Strate* exception. As an initial matter, the Court considers the scope of the *Strate* exception. After all, an exception to the tribal exhaustion rule that simply arises whenever tribal exhaustion is "plainly" unnecessary creates a risk

of analytical circularity that swallows the exhaustion rule entirely. Such an exception would be far less specific, and much more subjective, than the original three articulated in *National Farmers Union*. Indeed, the Eighth Circuit has grappled with this apparent conundrum, and has specified that *Strate* provides an exception to tribal exhaustion "only if the assertion of tribal court jurisdiction is *frivolous or obviously invalid under clearly established law*." *DISH Network*, 725 F.3d at 883 (emphasis added). But "[i]n circumstances where the law is murky or relevant factual questions remain undeveloped, the prudential considerations outlined in *National Farmers Union* require that the exhaustion requirement be enforced." *Id*.

With this lens in mind, the Court's assessment of the exhaustion issue is not ultimately a very close call. Here, it is undisputed that Mr. Vipond lives on fee land contained entirely within the White Earth Reservation. It is undisputed that Mr. Vipond's pumping activity would take place entirely on his fee land within the White Earth Reservation. It is undisputed that Mr. Vipond's Minnesota pumping permit allows him to

withdraw considerable amounts of water[4] from the River. And it is undisputed[5] that the Nation utilizes the River in several ways that are important to the Nation's economic activities and its societal functions. To be sure, Mr. Vipond has presented a number of arguments and disputes of fact—thoughtfully articulated and backed by authority—that his pumping would not impact the River and/or that his pumping does not meet the second *Montana* exception. But the Nation advances equally developed arguments and points to its own factual disputes, also replete with citations to good authority, which suggest that Mr. Vipond's extraction from the River is exactly the sort of non-member activity that threatens the Nation's "economic security, [] health[,] or welfare" as discussed in *Montana*.

In short, the merits of this case—which are considered here only to determine whether the *Strate* exception applies to Mr. Vipond's tribal exhaustion requirement—will

---

[4] In several places, Mr. Vipond appears to suggest that his extraction permit represents a facially inconsequential amount of water because it would amount to him taking "just one percent" of the Wild Rice River's daily flow volume. *See, e.g.*, ECF 33 (Opp. to Mot. to Stay) at 4. The Court acknowledges that there may be some hydrological complexity in the pumping of water from a river system, and that this nuance may ultimately support Mr. Vipond's contentions that his activity will not have a deleterious effect on the River or the Nation's use of the river and its various resources. But under any set of circumstances, an amount of water that is measurable in a full percentage point of a river's entire flow is, to put things simply, a large amount. And at argument, counsel for Mr. Roy emphasized that taking a certain amount of water in the spring, for example, could have a much different impact than doing so in August, the time that Mr. Vipond apparently intends to make his withdrawals.

[5] Mr. Vipond can of course argue that his pumping activities will not harm the Nation's ability to use water resources, but the Court does not discern any serious dispute that the Nation does use reservation water resources, including provided by the River, in several important ways.

10

be hard fought and appear to be the type over which reasonable minds can easily differ. The question of whether the Nation has the power, pursuant to *Montana,* to regulate Mr. Vipond's high-capacity well and water withdrawals will hinge on a factual record that remains undeveloped before this Court. And the question is manifestly *not* one over which the assertion of tribal court jurisdiction is so frivolous or plainly contradictory to established law that it relieves Mr. Vipond of his obligation to exhaust his tribal remedies before seeking this Court's intervention. *See also Gaming World Int'l*, 317 F.3d at 850 ("Federal court restraint is 'especially appropriate' where the issues between the parties grow out of '[t]ribal governmental activity involving a project located within the borders of the reservation.'") (quoting *Bruce H. Lien Co. v. Three Affiliated Tribes*, 93 F.3d 1412, 1420 (8th Cir. 1996). In summary, Mr. Vipond must exhaust his tribal remedies before seeking relief from this Court.

This ruling has several practical effects. First, it effectively denies Mr. Vipond's motion for a preliminary injunction. However, this denial is without prejudice, in that the Court has not assessed and has not denied Mr. Vipond's request for an injunction under the typical analysis set forth in, e.g., *Dataphase Sys. Inc. v. C.L. Sys. Inc.*, 640 F.2d 109 (8th Cir. 1981).[6] Should Mr. Vipond exhaust his remedies in the trial court and still wish to

---

[6] *Dataphase* sets forth a four-factor test for entering a preliminary injunction that includes an assessment of (1) the threat of irreparable harm to the movant in the absence of relief; (2) the balance between that harm and harm that the relief would cause the other litigants; (3) the likelihood of the movant's ultimate success on the merits; and (4) the public interest). 640 F.2d at 113.

pursue the same or similar equitable remedies in the federal court, nothing about this Order prevents him from doing so. Second, in determining that exhaustion is required, the Court will necessarily stay this litigation pending Mr. Vipond's exhaustion of remedies. The Court acknowledges that the contours of exhaustion in this case are somewhat opaque because the tribal court's threshold determination of its own jurisdiction might be considerably coextensive with the actual adjudication of the Nation's litigation against him in tribal court.[7] Here, the Court concludes that Mr. Vipond's exhaustion requirement will not be met until, at a minimum, the tribal court has found that it has jurisdiction in the tribal case against him and his pumping activities, and Mr. Vipond has sought and failed to receive a reversal of that decision in the tribal appellate court. *Temple*, 127 F.4th at 715 (to properly exhaust, "tribal appellate courts must have the opportunity to review the determinations of the lower tribal courts" prior to federal adjudication). As such, the stay will remain in effect until further notice from Mr. Vipond. Should he believe that exhaustion has been met, consistent with this Order, he may ask the Court to lift the stay via a letter on the docket. If such request will be opposed, the Court will set a briefing schedule at the appropriate time.

---

[7] In other words, what the Nation seeks from the tribal court is leave to exercise regulatory jurisdiction over Mr. Vipond, which requires largely the same analysis that will go into the court's own determination of whether it has jurisdiction to consider the Nation's request.

## III.    Order

Consistent with the foregoing discussion, Plaintiff David Vipond's Motion for Preliminary Injunction (ECF 22) is **DENIED**. It is further ordered that this case is **STAYED**, pending Mr. Vipond's exhaustion of his remedies in the tribal court of the White Earth Nation.


Date: March 5, 2025                                    *s/ Katherine Menendez*
                                                       Katherine Menendez
                                                       United States District Judge

13